# In the United States Court of Federal Claims

No. 14-1024C
(Filed: August 10, 2015)

|  |  |  |
|---|---|---|
| PETRO MEX, LLC, | ) | |
| | ) | |
| | ) | Motion to Dismiss; Breach of Lease; |
| Plaintiff, | ) | RCFC 12(b)(1); Statute of Limitations; |
| | ) | RCFC 17(a)(3); Mineral Leasing Act |
| v. | ) | of 1920; Lease Operator Lacks Privity; |
| | ) | Lease Owner Must Be Given |
| THE UNITED STATES, | ) | Opportunity to Intervene |
| | ) | |
| Defendant. | ) | |
| | ) | |

*Douglas J. Reynolds*, Durango, Colorado, for plaintiff.

*Kara Westercamp*, United States Department of Justice, Civil Division, Washington, DC, with whom were *Joyce R. Branda*, Acting Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, and *Allison Kidd-Miller*, Assistant Director, for defendant.

## OPINION DENYING MOTION TO DISMISS

***Firestone***, Judge.

Pending before the court is the motion of the defendant, the United States ("the government"), to dismiss, pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), the complaint of plaintiff Petro Mex, LLC ("Petro Mex") in this breach of contract action.  In its complaint, Petro Mex alleges that the United States Department of the Interior ("DOI"), Bureau of Land Management ("BLM") breached the terms of two Federal oil and gas leases in Colorado, numbers COC-0124705A ("Garfield Lease") and COC-088586 ("Mesa Lease") (together, "the Leases"),

in two respects.  First, Petro Mex alleges that the BLM breached the Leases by ordering

Petro Mex to shut in the wells on the Leases for various violations and then required

Petro Mex to stop production again after it cured the violations in the initial shut-in order.

Second, Petro Mex alleges that the BLM breached the Leases when BLM terminated the

Leases on August 26, 2009 for failing to produce oil and gas in paying quantities after a

March 2009 inspection noted that Petro Mex had cured the original violations but did not

have a compressor on site and thus could not produce any oil and gas.

 The government argues that the facts giving rise to the alleged breaches occurred

more than six years ago and thus the case is time-barred under the statute of limitations

set forth in 28 U.S.C. § 2501.[1]  In support of this argument, the government argues that

all of the events fixing the government's liability occurred in August 2008 when Petro

Mex alleges that it notified BLM that it had fixed all violations but the BLM did not lift

the shut-in order.  According to the government, there was no separate order issued in

October 2008 requiring Petro Mex to stop production and thus the only possible breach

would stem from BLM's failure to lift the shut-in order in August 2008.  The government

argues that BLM's termination decisions also stem from the decision not to lift the shut-

in orders in 2008 because Petro Mex's failure to produce stems from the continued effect

of the shut-in orders.  In the alternative, the government argues that, should Petro Mex's

breach of contract claims survive the statute of limitations challenge, the claims with

---

[1] The statute provides, in relevant part: "Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues."  28 U.S.C. § 2501.

regard to the Mesa Lease still must be dismissed on the grounds that Petro Mex is not the lessee and thus is not in privity of contract with the government.  The government contends that Petro Mex is the lease operator and a sub-lessee of the Mesa Lease and cannot bring a claim on behalf of the lessee.

For the reasons that follow, the court finds that plaintiff's complaint identifies an alleged breach beginning within the statute of limitations, and thus the complaint is not time-barred.  Additionally, while the court also finds that plaintiff lacks privity of contract with regard to the Mesa Lease, time to cure the defect must be provided. Accordingly, the government's motion to dismiss is **DENIED**.

## I.      STATEMENT OF FACTS[2]

The Leases were issued pursuant to the Mineral Leasing Act of 1920, 30 U.S.C. § 181.  The BLM executed the Mesa Lease with United Producing Company, Inc. on July 20, 1962 (effective September 1, 1962).  Through a series of assignments and mergers of corporate entities, EnCana Oil & Gas (USA), Inc. ("EnCana") acquired record title to the Mesa Lease in 1994.  As the entity holding record title to the Mesa Lease, EnCana is the "lessee," or leaseholder under 43 C.F.R. § 3100.0-5(i).  Petro Mex holds an operating interest in the Mesa Lease and "is responsible under the terms and conditions of the lease for the operations conducted on the leased lands or a portion thereof."  Id. § 3100.0-5(a). Pursuant to the Mineral Leasing Act, operating rights are severable from record title interests and thus two entities can have interests in the same lease.  Id. § 3100.0-5(c).

---

[2] The facts are taken from the complaint and attached exhibits and are not disputed unless noted.

The BLM executed the Garfield Lease with Celeste C. Grynberg on February 2, 1965 (effective March 1, 1965).  Through a series of assignments, Petro Mex acquired record title to the Garfield Lease in 2004.  As the lessee, Petro Mex has "the obligation to pay rent, and the rights to assign and relinquish the lease."  Id. § 3100.0-5(i).  Petro Mex alleges that, as of October 2008, the Garfield Lease had five wells, three of which were operational:  Federal 15-9, 6-9-8-101,[3] and Government 5.

Under the terms of both leases, the "Rights of Lessee," are set out as follows:

SECTION 1. Rights of Lessee.—The lessee is granted the <u>exclusive right and privilege to drill for, mine, extract, remove, and dispose of all the oil and gas deposits</u>, except helium gas, in the lands leased, together with the right to construct and maintain thereupon, all works, buildings, plants, waterways, roads, telegraph or telephone lines, pipelines, reservoirs, tanks, pumping stations, or other structures necessary to the full enjoyment thereof, for a period of 10 years, <u>and so long thereafter as oil or gas is produced in paying quantities</u>; subject to any unit agreement heretofore or hereafter approved by the Secretary of the Interior, the provisions of said agreement to govern the lands subject thereto where inconsistent with the terms of this lease.

Def.'s Mot., App'x 2 (emphasis added).  "Production in paying quantities" is defined as "production from a lease of oil and/or gas of sufficient value to exceed direct operating costs and the costs of lease rentals, or minimum royalties."  43 C.F.R. § 3160.0-5.  The leases are also "subject to the terms and provisions of the Act of February 25, 1920 (41 Stat. 437), as amended . . . and [are subject] to all reasonable regulations of the Secretary of the Interior now or hereafter in force, when not inconsistent with any express and specific provisions herein, which are made a part hereof."  Among the applicable

---

[3] While the complaint lists the well number as 6-9-0-101, the shut-in order lists it as 6-9-8-101. Def.'s App. 26-27.

regulations is a provision that, "[w]hen necessary for compliance, or where operations have been commenced without approval, or where continued operations could result in immediate, substantial, and adverse impacts on public health and safety . . . or royalty income, the authorized officer may shut down operations."  43 C.F.R. § 3163.1a(4).

As set forth in the complaint, the dispute between Petro Mex and the defendant involves all four oil and gas wells on lands covered by the Leases, three on the Garfield Lease and one on the Mesa Lease.  On April 25, 2008, BLM Field Office personnel inspected the Leases and issued several Notices of Incidents of Noncompliance for two wells on the Garfield Lease, including a major violation on the Federal 15-9 well.  The Field Office personnel again inspected the Leases approximately one month later and found that none of the noncompliance issues had been resolved.  Additionally, they found an additional major violation on the Government 5 well and a major violation on the Federal 2 well on the Mesa Lease.  Following the second inspection, on May 27, 2008, the Field Office ordered all of the wells on both leases to be shut-in "until all leaks are corrected and all compliance issues are resolved."  The shut-in orders required the corrective action to be completed by May 30, 2008.  The orders were issued pursuant to 43 C.F.R. § 3163.1a(3).

Petro Mex did not challenge the orders, and alleges that it corrected all the cited violations by the end of June 2008.  Petro Mex alleges that it notified the Field Office of this fact and then unilaterally resumed production from the wells in August 2008. According to Petro Mex, sometime in late October 2008—which plaintiff estimates as October 24 or 25, 2008—the BLM informed Petro Mex by phone that the shut-in orders

had not been lifted and that Petro Mex had to again halt production.  Petro Mex alleges

that it complied with the BLM's call and halted production on or about October 31, 2008.

Thereafter, on March 30, 2009, the BLM re-inspected the wells and found that

Petro Mex had resolved the compliance issues noted in 2008.  However, in

correspondence dated April 1, 2009, the BLM informed Petro Mex that the inspector

found there was no field compressor for the wells on the Garfield Lease and thus there

was no possibility of production of oil and gas from the wells.  The BLM advised Petro

Mex that the Leases would be terminated under 43 C.F.R. § 3107.2-2, unless, within 60

days, Petro Mex commenced drilling or reworking operations, restored production, or

otherwise proved that the wells were capable of producing oil or gas in paying quantities.

Petro Mex alleges that it responded to the BLM about one month later, explaining

that the wells were capable of production and that production had only been halted due to

the May 27, 2008 shut-in orders and that Petro Mex had resumed production but was

again shut down.[4]  Petro Mex further alleges that it informed the BLM that it would

resume production after the BLM lifted the shut-in order.  Meetings between BLM

personnel and Petro Mex followed, but the dispute over the compressor and

disagreements over certain outstanding fines and a bond owed by Petro Mex were not

resolved.

---

[4] At the oral argument on the motion, plaintiff's counsel explained that the wells were damaged
due to non-use after production was stopped in October 2008.

Eventually, the BLM Field Office recommended to the State Director of BLM that BLM terminate the leases for lack of production.  On August 26, 2009, the BLM State Director adopted the recommendation and terminated the Leases.  Specifically, the State Director informed Petro Mex that the Leases were terminated because they were "no longer capable of producing oil or gas in paying quantities after October 1, 2008."  Def.'s App. 55.

Petro Mex timely appealed the State Director's decision to terminate the Leases to the DOI's Interior Board of Land Appeals ("IBLA") and on September 27, 2010, the IBLA reversed and remanded the State Director's decision to terminate the Leases.  The decision states, in relevant part:

> In the instant case, BLM has lost sight of the distinction between cancelling a lease with a well capable of producing oil and gas lease in paying quantities for noncompliance and terminating such a lease for nonproduction.  The [Field Office] appears to have acted on the assumption that the failure to lift its shut-in orders due to new compliance concerns necessarily results in a cessation of production that renders these leases subject to termination under the [Mineral Leasing Act].  As we have found, the subject leases embrace wells that were producing at the time BLM issued the shut-in orders in May, as well as when Petro Mex mistakenly resumed operations in August 2008, and [the Field Office] refused to lift its shut-in orders because Petro Mex failed to comply with the authorized officers order to increase its bond (and pay a civil penalty to [the Minerals Management Service]).  Not being allowed to resume production from these leases because of BLM's shut-in orders is not synonymous with their not having wells capable of production.  Petro Mex's failure to comply with the authorized officer's order renders the leases subject to cancellation through judicial proceedings, provided the procedures in 43 C.F.R. §§ 3108.3 and 3163.1 are followed.
>
> Accordingly, . . . the August 26, 2009 decisions by the Colorado State Office to terminate [the Leases] are reversed and remanded for further action consistent with this decision.

Petro Mex, LLC, 180 IBLA 94, 105-06 (IBLA Dec. Sept. 27, 2010).  Thereafter, Petro

Mex allegedly "made demand" upon the Field Office to resume production on the Leases

and, according to Petro Mex, resumed production in October 2010.

On October 22, 2014, Petro Mex filed its complaint in this court, seeking damages

for an alleged breach of contract.  Petro Mex alleges that the government breached the

Leases by ordering it to cease production in late October 2008 after Petro Mex had

corrected the violations and resumed production.  Petro Mex further alleges that the

government breached the Leases by terminating the Leases on or about August 26, 2009,

because the Leases, as a matter of law, should never have been terminated.  The

government filed its motion to dismiss on February 20, 2015.  Oral argument on the

motion was heard on July 21, 2015.

## II.     DISCUSSION

### A.     Standard Of Review

When deciding a motion to dismiss for lack of subject-matter jurisdiction, the

court must first assume that all undisputed facts alleged in the complaint are true and

must draw all reasonable inferences in the non-movant's favor.  See Ashcroft v. Iqbal,

556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56

(2007)).  If the defendant contests the plaintiff's jurisdictional allegations, the court may

look at evidence outside of the pleadings in order to determine its jurisdiction over a case.

See Engage Learning, Inc. v. Salazar, 660 F.3d 1346, 1355 (Fed. Cir. 2011).  Should the

plaintiff fail to establish subject-matter jurisdiction by a preponderance of the evidence,

Banks v. United States, 741 F.3d 1268, 1278 (Fed. Cir. 2014) (citation omitted), the court "must dismiss the action," RCFC 12(h)(3).

**B.     Petro Mex's Action is Timely**

The government argues, in the first instance, that this court lacks subject-matter jurisdiction to entertain this case on the grounds that Petro Mex's breach of contract action is barred by the six-year statute of limitations set in 28 U.S.C. § 2501. Specifically, the government argues that the action is barred because all the events fixing the government's liability occurred and were known or should have been known to the plaintiff more than six years ago, when the government failed to lift the shut-in order in August 2008 after Petro Mex corrected the violations identified in the May 2008 shut-in orders.  See FloorPro, Inc. v. United States, 680 F.3d 1377, 1381 (Fed. Cir. 2012) (quoting Goodrich v. United States, 434 F.3d 1329, 1333 (Fed. Cir. 2006)); see also Oja v. Dep't of Army, 405 F.3d 1349, 1358 (Fed. Cir. 2005) (quoting United States v. Beggerly, 524 U.S. 38, 48-49 (1998)).  According to the government, Petro Mex's claim accrued on or before August 2008—but no later than October 1, 2008—because the only potential breach by the BLM was its failure to lift the shut-in orders after Petro Mex alleges that it had remedied its noncompliance and so notified the BLM.  The government argues that only one shut-in order was imposed, so the BLM's reinforcement of that order could not be a separate breach.  Additionally, the government states that it is unclear whether the alleged phone call instructing plaintiff to continue the shut-in order actually occurred, as it contends that the BLM does not make such requests without confirming it in writing.  Further, the government argues that the decision to terminate Petro Mex's

leases in 2009 does not give rise to a separate breach claim because Petro Mex's failure to produce stems from the BLM's same failure to lift the shut-in orders in August 2008.

In response, Petro Mex argues that its complaint was timely filed because the government has mischaracterized its claims and that, when properly construed, the breach of contract claims were timely filed.  First, Petro Mex argues that it is asserting a breach based on the BLM s decision in late October 2008 to order Petro Mex to stop production after the violations were corrected.  Petro Mex has filed an affidavit asserting a breach based on a late October 2008 BLM phone call in which Petro Mex claims it was instructed by the BLM to stop the production it had resumed in August 2008.  Second, Petro Mex argues that the BLM's August 2009 termination decisions also breached the leases because, as the IBLA determined, they were legally wrongful.  Petro Mex asserts that the breaches associated with termination of the Leases do not relate back to the original shut-in orders issued in May 2008 or to BLM's actions taken in October 2008. Rather, Petro Mex claims that the termination decisions are separate from the shut-in orders because BLM based the terminations of the Leases on new compliance issues that were identified in 2009 involving the compressor and certain fines and a bond allegedly owed by Petro Mex.

The court finds that plaintiff's breach of contract claims are not barred by the statute of limitations for two main reasons.  First, while the government argues that the breach alleged by plaintiff cannot be an actual breach, the government has not moved to dismiss for failure to state a claim.  At this stage of the proceeding, the court must take plaintiff's alleged breach claims at face value.  See Ashcroft, 556 U.S. at 678 (citing

Twombly, 550 U.S. at 555-56).  As such, regardless of whether plaintiff has stated a valid

claim for breach of contract, the court's task at this juncture is to determine whether,

assuming plaintiff has stated a valid claim for breach of contract, the claims were timely

filed.  Accordingly, the court rejects the government's motion to dismiss based on the

statute of limitations because the breach alleged by plaintiff occurred within 6 years of

filing the complaint.  Plaintiff does not challenge the BLM's failure to timely respond to

a request to lift the shut-in order in August 2008, as the government contends.  Rather,

plaintiff alleges that the BLM wrongfully told or ordered Petro Mex to shut-in during a

phone call in late October 2008 after the violations on the Leases were allegedly

corrected.  While the evidence of the alleged date of the phone call, sometime after

October 22, 2008, comes from plaintiff's employees, the date and the occurrence of the

phone call have not been disputed by the government. [5]  While government argues that it

has not been able to confirm that any phone call was made, the undisputed evidence

presented before the court indicates that, for the purpose of determining whether the

statute of limitations has run, Petro Mex was told to stop production on either October 24

or 25, 2008.  Accordingly, the breach claim based on the October shut-in is therefore

timely filed.  If, after discovery, the evidence establishes that there was no phone call,

plaintiff's breach claim will fail on the merits.

---

[5] While the government contends that it is unlikely that the BLM called plaintiff to order the
shut-in order to be resumed without confirming that in writing, the government acknowledges
that it cannot offer evidence at this stage to rebut the affidavits submitted by plaintiff.  Instead,
the government claims only that a phone call without accompanying written correspondence is
not standard BLM practice.

Second, the court also cannot accept the government's contention that plaintiff's breach of contract claims based on the termination decisions stem from the original failure to lift the orders in August 2008.  As plaintiff argues, the allegations made in its breach claim are based on the BLM's finding that Petro Mex had failed to cure new compliance issues that were identified in 2009.  Most importantly, Petro Mex alleges that the decision to terminate arose after the parties could not resolve the compression pump issue identified in the April 1, 2009 letter from the BLM.  A review of the termination notices and IBLA decision support Petro Mex's reading of the 2009 termination decisions.  Accordingly, Petro Mex's breach claims based on wrongful termination decisions were timely filed.

### C.      Petro Mex's Breach of Contract Claim Based on Its Operator Status

The government also argues that Petro Mex's breach of contract claims regarding the Mesa Lease must be denied because, as an operator, Petro Mex lacks privity of contract with the United States.  First Hartford Corp. Pension Plan & Trust v. United States, 194 F.3d 1279, 1289 (Fed. Cir. 1999).  It is well-settled that, to maintain a cause of action for breach of contract, the plaintiff "must show that there is a contract directly between itself and the government, i.e., that there is privity of contract."  Estes Express Lines v. United States, 739 F.3d 689, 693 (Fed. Cir. 2014) (citing Cienega Gardens v. United States, 194 F.3d 1231, 1239 (Fed. Cir. 1998); Anderson v. United States, 344 F.3d 1343, 1351 (Fed. Cir. 2003)); Sullivan v. United States, 625 F.3d 1378, 1380 (Fed. Cir. 2010) (quoting Erickson Air Crane Co. of Wash. v. United States, 731 F.2d 810, 813 (Fed. Cir. 1984)).

Here, the evidence presented by the government establishes that EnCana is the lessee of the relevant portion of the Mesa Lease and thus EnCana, not Petro Mex, has the contract with the government.[6] Petro Mex has not presented credible evidence to refute the title search presented by the government, which shows that EnCana owns the Lease and Petro Mex is the operator of the Lease. As a lease operator, Petro Mex does not have a direct contractual relationship with the government. See Harry L. Bigbee, 2 IBLA 23, 27 (IBLA Dec. Mar. 1, 1971) (finding that an operating agreement "does not give rise to a contractual relationship between the United States and the operator even though the agreement binds the operator to fulfill the lessee's obligation under the lease."). As a result, Petro Mex is not in privity of contract with the government, and, "absent privity" between the government and Petro Mex, "there is no case." Katz v. Cisneros, 16 F.3d 1204, 1210 (Fed. Cir. 1994).[7]

---

[6] Petro Mex asserts that EnCana may not actually own the Mesa Lease and that Petro Mex may have acquired title, arguing that the government's documents are not definitive on the issue. The government argues in response that no transfer of title was ever recorded with the BLM, that the government's certified land examiner confirmed after an official search that EnCana was the title holder, Def.'s Supp. App. 1-3, and that EnCana has acted as the record title holder by receiving the leaseholder correspondence from BLM. Plaintiff has not presented any evidence to refute the evidence presented by the government, and instead argues only that there may have been a transfer not in the record. This argument is unavailing.

[7] The court rejects Petro Mex's contention that it has an implied-in-fact contract with the government based on its operator status. The regulations provide the following definitions:

> Operating rights owner means a person who owns operating rights in a lease. A record title holder may also be an operating rights owner in a lease if it did not transfer all of its operating rights.
> Operator means any person or entity including but not limited to the lessee or operating rights owner, who has stated in writing to the authorized officer that it is responsible under the terms and conditions of the lease for the operations conducted on the leased lands or a portion thereof.

Nevertheless, the rules of this court provide:

> The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action.  After ratification, joinder, or substitution, the action proceeds as if it had been commenced by the real party in interest.

RCFC 17(a)(3); see also Ground Improvement Techniques, Inc. v. United States, --- F.

App'x ---, 2015 WL 4603693 at *5 (Fed. Cir. July 28, 2015) (quoting RCFC 17(a)(3)).

Accordingly, the court will provide plaintiff with time to cure this defect.

## III.    CONCLUSION

For the foregoing reasons, the government's motion to dismiss is **DENIED**.

Plaintiff shall have 60 days to cure the privity defect.  The government shall have 30 days

from the filing of the amended complaint or plaintiff's notice to the court that no

amendment is necessary to file its answer.

**IT IS SO ORDERED.**


s/Nancy B. Firestone
NANCY B. FIRESTONE
Judge

---

43 C.F.R. § 3160.0-5.  Thus, the regulations are clear that an operator is not synonymous with a lessee and therefore does not mean that the party has a contractual relationship with the government.